VILLAGE OF ASHAROKEN and Others, Plaintiffs, v. THE METRO-POLITAN SAND AND GRAVEL COMPANY and Others, Defendants.

Supreme Court, Suffolk County, October 6, 1931.

*Edward M. Grout* and *Paul Grout* [*Hiram Thomas* and *Charles B. LaVoe* of counsel], for the plaintiffs.

*Macklin, Brown, Lenahan & Speer* [*Paul Speer* and *Alexander Miller* of counsel], for the defendants.

DODD, J. This is an action for an injunction to restrain defendants from erecting and maintaining jetties or breakwaters and dredging and maintaining a channel between them on property owned by the defendants in Long Island sound.

The village of Asharoken is an incorporated village in the town of Huntington. It includes a narrow strip of land about two miles in length extending from the mainland to Eaton's neck and separating Long Island sound on the north from Northport bay and Duck Island harbor on the south and known as Asharoken beach. Running through the village and along the two-mile strip described

is a concrete highway constructed by the village and improved by gas and water mains. The village as plaintiff is joined by a number of individual owners of property fronting on Long Island sound.

The defendant Metropolitan Sand and Gravel Company is the owner of approximately 177 acres of upland fronting on Long Island sound, and to the east of the properties of the individual plaintiffs, but partly within confines of the plaintiff village. This defendant owns land under water in front of its upland extending approximately 500 feet along the shore front and approximately 1,500 feet into Long Island sound. It acquired this underwater land by patent from the State of New York. This defendant holds a permit from the United States Government Department of War to erect jetties or breakwaters on this underwater land and to dredge a channel between the jetties. The defendant Goodwin Gallagher Sand and Gravel Corporation is the owner of all of the stock of the defendant Metropolitan Sand and Gravel Company and the defendant Moran Brothers is the contractor engaged in the erection of the jetties and the dredging of the channel.

The work has been instituted and is in progress. The plaintiffs seek a permanent injunction, the effect of which would be to prevent the erection of the jetties and the dredging of the channel.

The gist of the plaintiffs' theory is that the jetties will operate to prevent altogether, or so materially change the existing normal action of wind, wave and current of Long Island sound in bringing sand to Asharoken beach, that the property of the plaintiffs will be deprived of the benefits of accretion and there will be no proper offset to the natural processes of erosion. Plaintiffs claim that the history of the beach establishes a gain from accretion based on the resultant drift along Long Island sound from east to west.

Defendants contend that the erection of the jetties would not have the effect of preventing or decreasing the accretion as a matter of fact and argue that even did the erection produce such result, the plaintiffs are not entitled, as a matter of law, to injunctive relief, depriving defendants of putting their property to the contemplated use.

After a careful study of the voluminous testimony of experts and laymen, supplemented by numerous exhibits, I am satisfied that the plaintiffs' contention that the resultant drift is from east to west is correct, and that the erection and maintenance of the jetties to the east of the plaintiffs' property will have the effect of decreasing the volume of sand deposits that result in accretion. However, I am not satisfied that the jetties would either cause or increase erosion of the plaintiffs' beach.

Accordingly, plaintiffs' right to relief rests on a determination

of the question of law whether there is a vested right to future accretions that must be sustained by injunction by restricting the use of property of a contiguous owner, since plaintiffs concede that no other legal right, actual or claimed, is being violated. This question is novel and of the first instance. Exhaustive research by counsel and the court fails to disclose a single case on this point in this or any jurisdiction of the United States. Cases cited as parallel or suggestive of the principles to be applied are readily distinguishable. In many the land on which the erection was placed was not owned by the erector, and accordingly his right not as extensive as these defendants possess. In others the accretion had already formed and vested. The majority are of interference with user or diversion of the bed or course or diminution or acceleration of the flow of defined inland, navigable or non-navigable, watercourses involving contests between riparian owners. In no one case where relief has been granted is the holding based primarily and solely on the vested right to future accretion. Indeed, while I do not consider that the principles governing the watercourse cases would be controlling or applicable necessarily in a case involving an ocean front, there being such fundamental difference in the nature of the bodies of water and the problems arising therefrom, the theory of the law underlying a restriction of interference in watercourse cases is helpful in arriving at a determination of the attitude to be adopted in this case. It seems to me that the watercourse cases are predicated on a desire of the law to maintain the existing state of a defined stream, so that the user of the riparian owner will continue without artificial interference. This user or right to user will be protected even if not presently productive, as in the case of a watercourse that has become dry. The law in these cases establishes an equality of vested right as to use and natural continuance. The effect is mutually beneficial and permits those who purchase relying on the benefits of use to realize the fruits of the purchase. The development of industries and farm land dependent on water for power or irrigation would have been hampered if the upper riparian landowner had the right to change the course of the stream or dam, diminish or increase its flow to suit his own needs or caprices irrespective of the interests or desires of lower owners. The law applies and enforces the maxim *sic uterere tuo ut alienum non lœdas* in restricting the use of an owner and preventing interference that will harm adjoining owners for the mutual benefit of all and the proper development of land and industry. It will not, however, apply the maxim in every case, since many proper applications of use bring resultant injury to adjoining landowners, such result being within the maxim *damnum*

*absque injuria* and one of the incidents and burdens of ownership. The maxim is applied reasonably, the law appreciating that burdens as well as benefits flow from ownership.

In this case there is no interference with use. The plaintiffs' property is still available for all purposes to which it could be put, whether defendants' breakwaters exist or not. Nor can the analogy of watercourse cases as to change of bed diversion of the flow or increase or decrease in volume be applied. The effect of defendants' breakwaters will not be other than a decrease of what incidentally accompanies the flow, namely, the sand. To say that the plaintiffs have a vested right in future sand deposits or future accretions does not appeal to me as consistent with the theory or development of the law or consonant with a proper application of the doctrine " *sic uterere*," etc. That doctrine contemplates something more definite and substantial than a hope. The future accretions are speculative, impossible of even approximate measurement and dependent on a continuance of natural phenomena. Experience indicates that it is impossible to say with certainty whether at a particular point along an ocean front there will be accretion or erosion or a continuance of present conditions. What is expected may not occur. The law has developed to the extent of vesting the accretion in the shore front owner when it has formed. In this manner it gives him the benefit as he receives the loss in cases of erosion. To go further and hold that the use and development of adjoining property should be prevented and limited so that accretion might form or erosion might be prevented would result in subordinating existing rights to use and develop property to rights that might or might not be acquired in the future.

Accordingly, I feel that the proposed use of the defendants' property is proper, not violative of any right enjoyed by the plaintiffs, and that any injury that results to the plaintiffs is properly incidental to their ownership.

Judgment for the defendants. Submit findings and judgment on notice.